**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TRANSUNION INTELLIGENCE LLC, and TRANS UNION LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     **Case No. 2:10-130-TJW**<br>) |
| SEARCH AMERICA, INC., EXPERIAN INFORMATION SOLUTIONS, INC., AND EXPERIAN PLC | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF MINNESOTA

      Defendants Search America, Inc. and Experian Information Solutions, Inc. (collectively, "Defendants") hereby move for transfer to the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, as supported by the accompanying declarations, the Defendants respectfully request that the Court transfer this case to the District of Minnesota, a clearly more convenient venue.

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................4

II. STATEMENT OF FACTS ..................................................................................................4

    A. TransUnion's Lack Of Ties To The Eastern District Of Texas ............................5

    B. SearchAmerica's Ties To The District Of Minnesota And Its Lack Of Ties To The Eastern District Of Texas ........................................................................5

    C. Experian's Lack Of Ties To The Eastern District Of Texas .................................6

III. ARGUMENT ........................................................................................................................6

    A. The District Of Minnesota Is A Proper Venue As SearchAmerica Is In Minnesota, And Experian Is Subject to Personal Jurisdiction There ....................8

    B. Private Factors Favor Transfer Since SearchAmerica Is Based In Minnesota, And The Eastern District Of Texas Is Not Convenient To Any Party. .........................................................................................................................8

    C. Public Interest Factors Favor Transfer To Minnesota, Because Its Residents Have A Connection To The Litigation. ..............................................15

IV. CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .................................................................................................... 13
*In re Genentech, Inc. and Biogen Idec Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................................. 8, 11
*In re Hoffman-La Roche*,
   587 F.3d 1333 (Fed. Cir. 2009) ................................................................................. 4, 13
*In re Nintendo Co. Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ............................................................................... 12, 13
*In re TS Tech USA Corporation*,
   551 F.3d 1315 (Fed. Cir. 2008) ............................................................................... 10, 13
*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ................................................................................ 4, 8, 13
*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...................................................................................................... 5
*MHL Tek, LLC v. Nissan Motor Co.*,
   2009 WL 440627 (E.D. Tex. Feb. 23, 2009) .............................................................. 13
*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ...................................................................................................... 4
*Red River Fiber Optic Corp. v. Verizon Serv. Corp.*,
   2010 WL 3064012 (E.D. Tex, Aug. 3, 2010) ............................................................. 12
*Teleconference Sys. v. Proctor & Gamble Pharms.*,
   676 F. Supp. 2d 321 (D. Del. 2009) ............................................................................ 13
*Vasudevan Software, Inc. v. International Business Machines Corp.*,
   2009 WL 3784371 (E.D. Tex. Nov. 10, 2009) ......................................................... 4, 6

**Statutes**

28 U.S.C. § 1331 .................................................................................................................. 5
28 U.S.C. § 1338(a) ............................................................................................................. 5
Minn. Stat. § 543.19 ............................................................................................................ 5
U.S.C. § 1391(b) .................................................................................................................. 5
U.S.C. § 1404(a) ............................................................................................................. 4, 8

**Rules**

Fed. R. Civ. Proc.
   45(b)(2) ....................................................................................................................... 11

## I. INTRODUCTION

None of the parties to this suit maintain any facilities here related to this case. Plaintiffs TransUnion Intelligence LLC and Trans Union LLC ("TransUnion") have principal offices in Illinois, and no apparent ties to the Eastern District of Texas. Defendant SearchAmerica, Inc. ("SearchAmerica") has no ties to this District. The alleged patent infringement occurred in the District of Minnesota; the documents are located there and the witnesses reside there. Defendant Experian Information Solutions, Inc. does business generally in the Eastern District of Texas, but operates independently from SearchAmerica, and has nothing to do with the accused programs.

It would be inconvenient and inefficient to try the case in a district when the witnesses and documents reside in another district, and *none* reside in this District. All or most of the witnesses are located in the District of Minnesota, where the alleged infringer is located, and none here. All or most of the documentary evidence is located there, and none here. Any allegedly infringing product design and development and related events occurred in the District of Minnesota. Unlike the Eastern District of Texas, the District of Minnesota has a substantial connection to the litigation and is a clearly more convenient venue.

## II. STATEMENT OF FACTS

The accused software programs were designed, operated, and maintained in Minnesota by SearchAmerica. Compl. ¶ 10; D. Johnson Decl. ¶ 3. TransUnion alleges that Search America, Inc. and Experian Information Solutions, Inc. ("Experian"), infringe the only patent-in-suit, U.S. Patent No. 7,333,937 ("the '937 patent"). Compl. ¶ 10. (Experian plc, a holding company with no ties to the United States, has already been dismissed.) The '937 patent putatively describes a method for assessing what patients may receive charity for their healthcare. Compl. ¶¶ 9-13, Ex. A. The Complaint alleges infringement by the SearchAmerica Charity Advisor and Medicaid Advisor software programs, and the Payment Advisor Suite$^{SM}$ that includes both (the "accused programs"). Compl. ¶ 10.

A.      **TransUnion's Lack Of Ties To The Eastern District Of Texas**

Plaintiffs have not alleged that a single party is incorporated within, or has a principal place of business in, the Eastern District of Texas.  TransUnion Intelligence LLC is a Nevada corporation, and TransUnion LLC is a Delaware corporation.  Compl. ¶¶ 1, 2.  Both have principal offices in Chicago, Illinois.  *Id.*

B.      **SearchAmerica's Ties To The District Of Minnesota And Its Lack Of Ties To The Eastern District Of Texas**

   1.   **SearchAmerica's office and employees are in Minnesota.**

SearchAmerica is a Minnesota corporation, with its principal place of business in Maple Grove, Minnesota.  D. Johnson Decl. ¶ 3.  SearchAmerica has never maintained an office outside of Minnesota.  *Id.*  SearchAmerica's management, product development, and finance employees are located in Minnesota.  *Id.*  For several years after its founding, all of SearchAmerica's employees were in Minnesota.  *Id.*  Today, almost all of SearchAmerica's employees are in Minnesota, and none are located in the Eastern District of Texas.  *Id.*  All of the program management and product development employees at SearchAmerica work and reside in Minnesota.  S. Johnson Decl. ¶ 3; Pukal Decl. ¶ 3.  SearchAmerica maintains its only office there.  D. Johnson Decl. ¶ 4.  All nine of SearchAmerica's key witnesses are in Minnesota.

   2.   **SearchAmerica's documents, computers, and data are in the District of Minnesota.**

None of the Defendants' documents regarding the design and implementation of the accused programs are located in the Eastern District of Texas.  Norris Decl. ¶ 6; S. Johnson Decl. ¶¶ 3, 4, 5, 6; Busch Decl. ¶ 4.  All of SearchAmerica's program data, and its documents, are in the District of Minnesota.  D. Johnson Decl. ¶ 4; S. Johnson Decl. ¶¶ 4, 6; Pukal Decl. ¶ 3; Millhouse Decl. ¶ 3; Busch Decl. ¶ 3.  None of the financial documents regarding the accused programs, including licensing revenue information, are located in the Eastern District of Texas. Norris Decl. ¶¶ 4, 6; Velin Decl. ¶¶ 3, 4; Osterlie Decl. ¶ 3.  These documents are located in

SearchAmerica's facilities in Minnesota. *Id.* None of the information about the development and implementation of the accused programs is in the Eastern District of Texas.

### 3. SearchAmerica's customers are dispersed throughout the United States.

SearchAmerica's serves customers located throughout the country. Over 96% of SearchAmerica's 175 customers are outside Texas. Pukal Decl. ¶ 4. Only three customers – comprising less than 2% of SearchAmerica's customers – use one of the accused programs and are based in Texas. *Id.* Today, SearchAmerica has only one customer in the Eastern District of Texas using an accused program. *Id.*

### C. Experian's Lack Of Ties To The Eastern District Of Texas

Experian's headquarters and relevant employees are in California. Experian is an Ohio corporation with its principal place of business in Costa Mesa, California. Barrios Decl. ¶ 2. Costa Mesa is located within the Central District of California. Experian does not develop, operate, license, install, or provide technical support for the accused programs. Barrios Decl. ¶¶ 4, 5, 6. None of Experian's employees develop, operate, license, install, or support the accused programs. Norris Decl. ¶ 6; Barrios Decl. ¶¶ 4, 5, 6. Both of Experian's key witnesses, who would testify about Experian's lack of ties to the accused programs, reside in California. Norris Decl. ¶ 9; Barrios Decl. ¶ 7.

Experian, a sister company, operates independently from SearchAmerica. Norris Decl. ¶¶ 5, 6. Experian has consumer credit data centers in Allen and McKinney, Texas, but these facilities do not host any accused programs, provide any technical support, or store any data for SearchAmerica. Barrios Decl. ¶¶ 4, 5, 6. Experian has not integrated its computers, servers, data centers, or technical support with SearchAmerica's operations. *Id.* They are separate.

### III. ARGUMENT

This case should be transferred to the District of Minnesota, where SearchAmerica resides. "For the convenience of parties of witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a). Transfer is appropriate when none of the parties has any significant ties to the district. *Vasudevan Software, Inc. v. Int'l Bus. Mac. Corp.*, 2009 WL 3784371, *2 (E.D. Tex. Nov. 10, 2009) (granting motion to transfer). Transfer should be granted when the vast majority of the witnesses are in an alternative forum, and none in the forum. *Id.* That is the case here.

Under Fifth Circuit precedent, "[t]he district court has broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).[1] Such a transfer will be granted if the Defendants show "good cause" "that the transferee venue is clearly more convenient." *Id*. Convenience analysis requires proof (1) that the transferee district is a proper venue where the case could have originally been filed and, (2) that the public and private interest factors in a *forum non conveniens* analysis support transfer. *Id.* at 314-15.

The standard for transfer is whether an alternative venue is "clearly more convenient." *Id.* at 315. The standard is a multi-factor test, considering both private and public factors. *Id.*, citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). The private factors are:

(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witness;

(3) the cost of attendance for willing witnesses; and

(4) other practical problems that make a trial easier, more expeditious, less expensive.

The public interest factors are:

(1) administrative difficulties flowing from court congestion;

(2) the local interest in localized interests being decided at home;

(3) the familiarity of the forum with law governing the case; and

(4) the avoidance of unnecessary problem of conflicts of laws or application of foreign law. *Id.* Both private and public factors favor transfer in this case.

---

[1] The Federal Circuit applies regional circuit law to district court decisions related to venue. *See In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

A. **The District Of Minnesota Is A Proper Venue As SearchAmerica Is In Minnesota, And Experian Is Subject to Personal Jurisdiction There.**

The District of Minnesota is a venue where the case could originally have been filed, because jurisdiction and venue are proper there.  For jurisdiction, the District of Minnesota has subject matter jurisdiction over this patent infringement case, under 28 U.S.C. §§ 1331, 1338(a), as a federal question.  The District of Minnesota also has personal jurisdiction over its residents and out-of-state corporations, so long as consistent with minimum contacts and constitutional due process.  Minn. Stat. § 543.19; *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). SearchAmerica is subject to personal jurisdiction in the District of Minnesota because its headquarters is in Minnesota.  D. Johnson Decl. ¶ 3.  Experian is subject to personal jurisdiction in the District of Minnesota because it licenses data to customers there.  Barrios Decl. ¶ 2.

Venue is proper in the District of Minnesota as a district in which a substantial part of the events giving rise to a claim of patent infringement claim occurred.  28 U.S.C. § 1391(b).  The accused programs in this case were developed and managed from SearchAmerica's facilities in Minnesota.  D. Johnson Decl. ¶ 3; S. Johnson Decl. ¶ 3.  Any alleged infringement, contributory infringement, or inducement to infringement alleged to have transpired would have occurred in the District of Minnesota, because the product management and product development of the accused programs has always occurred there.  S. Johnson Decl. ¶ 3.

B. **Private Factors Favor Transfer Since SearchAmerica Is Based In Minnesota, And The Eastern District Of Texas Is Not Convenient To Any Party.**

This case should be transferred to the District of Minnesota, where there are nine important witnesses, including two non-party witnesses outside of this Court's subpoena power. Nearly all of the documents are located there.  Experian is merely an affiliate of SearchAmerica, and does not design, develop, install, customize, support or license the accused infringing programs.  Plaintiff TransUnion itself is a stranger to this forum, and being based in Chicago, is closer to the transferee forum.

A case should be transferred when none of the underlying actions in the case occurred in the forum, and the accused product was designed and developed in the alternative district, along with "the vast majority of relevant witnesses." *Vasudevan Software,* 2009 WL 3784371 at *3. That is the case here. From the start, the programs were designed, licensed, and operated in Minnesota. The private factors in this case overwhelmingly favor transfer there.

### 1. Minnesota would provide far easier access to sources of proof.

The Eastern District of Texas is convenient to none of the parties. Neither Plaintiff TransUnion, nor the Defendants have any significant ties to this district; they are all based elsewhere. None of the Defendants is incorporated or has its principal place of business in the Eastern District of Texas. Without any employees in the Eastern District of Texas, SearchAmerica has no presence in Texas that should be given weight in the transfer analysis. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010). SearchAmerica has one low-level sales representative, located in Dallas, who operates out of his home. D. Johnson Decl. ¶ 3. He does not have important testimony to offer.

### a. The vast majority of relevant party witnesses are in Minnesota.

All *nine* of SearchAmerica's key witnesses on the relevant issues are in Minnesota. Access to these witnesses, and their documents, is much more convenient in the District of Minnesota than in the Eastern District of Texas. Seven of these are party witnesses. *See* D. Johnson Decl. ¶ 6; S. Johnson Decl. ¶ 7; Velin Decl. ¶ 6; Osterlie Decl. ¶ 4; Pukal Decl. ¶ 5; Millhouse Decl. ¶ 4; Busch Decl. ¶ 5. The product management and product development of the accused programs has always occurred in and around Maple Grove, Minnesota, and all of its management and development employees reside there. S. Johnson Decl. ¶ 3.

Since SearchAmerica is based in Minnesota, the "vast majority" of the witnesses, evidence, and events are there. The primary SearchAmerica facilities are in Maple Grove, Minnesota, within twenty miles of the District of Minnesota courthouse in Minneapolis. D. Johnson Decl. ¶ 3; *see* Friedt Decl. Ex. A. The important SearchAmerica witnesses there are:

- John Haugo, former Chairman, knowledgeable about the separate operations of Experian and SearchAmerica, relevant to an indirect infringement inquiry. He also can testify regarding SearchAmerica's independent product development.

- Dan Johnson, President and co-founder, knowledgeable about SearchAmerica's market strategy.

- Steve Johnson, Chief Technology Officer and V.P., Product Development, responsible for SearchAmerica product design and development.

- Tom Velin, Senior V.P., Finance and Operations, responsible for SearchAmerica financial information, including accused program revenues since July 2007.

- Scott Osterlie, Account Manager and former Controller, previously responsible for and knowledgeable about SearchAmerica's financial information, including accused program revenues prior to July 2007.

- Steve Pukal, V.P. Client Services, responsible for the customization of accused programs, and knowledgeable about customer demand of key features.

- Kathy Mancell, former Product Manager, who was present during the conceptual development of CharityAdvisor, a program for selecting potentially eligible patients for charity care.

- Steve Millhouse, Director, Product Management, subsequent manager of the product specifications development for the accused programs.

- Chris Busch, Senior Developer, development team lead responsible for writing the computer code implementing logic flows for the accused programs.

All of these witnesses reside over 950 miles from the Marshall, Texas courthouse, and fewer than 20 miles from the District of Minnesota in Minneapolis, Minnesota. *See* Friedt Decl. Ex. A, Haugo Decl. ¶ 5, D. Johnson Decl. ¶ 6; S. Johnson Decl. ¶ 7; Velin Decl. ¶ 6; Osterlie Decl. ¶ 4; Pukal Decl. ¶ 6; Mancell Decl. ¶ 4; Millhouse Decl. ¶ 4; Busch Decl. ¶ 5. In this Circuit, "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) (granting writ of mandamus for clear abuse of discretion and vacating trial court denial of motion to transfer). Scheduling witnesses to "minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Id.* at 205. There are no direct flights between Minneapolis, Minnesota and the Marshall, Texas area. *See* Friedt Decl. Ex. C.

With SearchAmerica located in Minnesota, and TransUnion located in Illinois, this factor weighs heavily in favor of the District of Minnesota. When the alleged infringer has its headquarters and research and development in the alternative venue, the convenience of the witnesses favors transfer "not only slightly." *In re Genentech, Inc. and Biogen Idec Inc.*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009) (granting writ of mandamus directing the Eastern District of Texas to vacate its denial of a motion to transfer).

The SearchAmerica operations in Minnesota include all of the key witnesses and documents regarding the SearchAmerica Charity Advisor, Medicaid Advisor, and Payment Advisor Suite[SM] software programs. Experian does not make, use, or license the accused infringing programs. Barrios Decl. ¶ 3. The accused programs (Compl. ¶ 10) are operated by SearchAmerica, not Experian. Norris Decl. ¶ 6; Barrios Decl. ¶¶ 3, 4. While TransUnion alleges generically that Experian has "engaged in infringing activities" at Experian's Allen, Texas location (Compl. ¶ 4), Experian does not operate any accused programs there – or anywhere on its computers or servers – or provide any call center or technical support for SearchAmerica

there – or anywhere else. Barrios Decl. ¶¶ 4, 5. Experian and SearchAmerica have never integrated their information technology infrastructure or technical support. *Id.* Experian's computers and servers do not operate any of the accused programs, and Experian's call centers and technical support teams do not support the accused programs. *Id.*

Further, Experian and SearchAmerica have never integrated their data storage systems. Barrios Decl. ¶ 6; S. Johnson Decl. ¶ 6. Experian's computers and servers do not store any data on behalf of SearchAmerica specifically, in Texas or anywhere else. Barrios Decl. ¶ 6. Experian does maintain consumer credit data centers in Allen and McKinney, Texas, solely on Experian's behalf and Experian's customers. *Id.* These facilities do not host any accused programs, provide any technical support, or store any data for SearchAmerica. *Id.* SearchAmerica maintains its data for the accused programs in Minnesota. S. Johnson Decl. ¶ 6.

Defendant Experian's two party witnesses are based in California, and are relevant only to demonstrate that Experian has nothing to do with licensing, installing, customizing, operating or providing technical support for the accused programs. Norris Decl. ¶ 6; Barrios Decl. ¶¶ 3, 4, 5. Experian and SearchAmerica, while owned indirectly by a common holding company, operate independently. Norris Decl. ¶¶ 5, 6; D. Johnson Decl. ¶ 5. For Experian, travel is more convenient to Minnesota because there are direct flights from Experian's nearby Orange County airport. Friedt Decl. Ex. D. In contrast, travel to Marshall requires either a non-direct flight to Shreveport or a direct flight to Dallas with a three hour drive to Marshall. Friedt Decl. Ex. B, D.

Minneapolis would also be clearly more convenient for TransUnion. There are several direct flights each day from Chicago, with a travel time of only 1.5 hours. Friedt Decl. Ex. F. Presently, TransUnion first has to fly to Dallas (2.25 hours) or Shreveport (3.75 hours), and then drive to Marshall. Friedt Decl. Ex. B, F. Total travel time for TransUnion is at least 3 hours more to Marshall than to Minneapolis. Friedt Decl. ¶ 9.

### b. The relevant documents are in Minnesota.

SearchAmerica is the party with the vast majority of relevant records. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.

Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345. Where a "vast majority of physical and documentary evidence" are far more conveniently located near a different venue, this factor weighs in favor of transfer. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (ordering trial court denial of motion to transfer be vacated).

The information regarding the development and administration of the accused programs is located in Minnesota. The accused programs were developed by SearchAmerica's Minnesota employees at SearchAmerica facilities in Minnesota. S. Johnson Decl. ¶ 4; Busch Decl. ¶¶ 3, 4. SearchAmerica's technical service, support, and customer care employees are also located in Minnesota. Pukal Decl. ¶ 3. The documents and electronic information recording the design and development of the accused programs are all in Minnesota. S. Johnson Decl. ¶ 4; Busch Decl. ¶ 3. None of SearchAmerica's product development or software programming of any accused program occurred in Texas. S. Johnson Decl. ¶¶ 4, 6; Busch Decl. ¶ 3. All of the relevant development and implementation documents are in Minnesota.

All of the financial records regarding the accused programs are also in Minnesota. Velin Decl. ¶ 3. SearchAmerica maintains its financial records in Maple Grove, Minnesota. *Id.* There are approximately 58,720 pages of financial documents related to SearchAmerica healthcare programs located in Minnesota. Velin Decl. ¶ 4. Whatever few documents that Experian has relating to the SearchAmerica acquisition are also in Minnesota. Velin Decl. ¶ 5.

TransUnion cannot complain on this factor, as its principal place of business in Chicago is closer to Minneapolis than to Marshall. Friedt Decl. Ex. A. TransUnion has already inconvenienced itself, and likely has far fewer documents to support an alleged damages claim.

### 2. SearchAmerica's former employees can be subpoenaed only if the case were transferred to the District of Minnesota.

With SearchAmerica's operations based in Minnesota, there are at least two former SearchAmerica employees with important testimony residing within 100 miles of the District Minnesota. SearchAmerica's consultants and contract employees are also in Minnesota. S.

Johnson Decl. ¶ 5. Thus the compulsory process powers of the District of Minnesota cover more potential third-party witness former employees than the Eastern District of Texas. *See* Fed. R. Civ. P.. 45(b)(2). Where the "transferee venue is a venue with usable subpoena power" over a substantial number of witnesses, and there is "no witness who can be compelled to appear in the Eastern District of Texas," this factor "weighs in favor of transfer, and not only slightly." *In re Genentech, Inc.*, 566 F.3d at 1345.

TransUnion cannot disadvantage the Defendants in their defense simply by filing in a distant and unrelated forum. The subpoena power represents a crucial element of resolving the many factual issues raised by this case, and the third parties knowledgeable about the alleged infringement in this case represent key sources of proof. Ms. Mancell can testify regarding the initial conception of the program to find charity patients. Mancell Decl. ¶ 3. Mr. Haugo can testify regarding SearchAmerica's operating independently from Experian, a key issue in any indirect infringement theory. Haugo Decl. ¶ 3.

Similarly, the inventors for the '937 patent appear to reside in and around Fort Lauderdale, Florida, and the original patent prosecution counsel appear to reside in and around West Palm Beach, Florida and Boca Raton, Florida, all further than 100 miles from Marshall. Compl. Ex. A; Friedt Decl. Ex. B, G, H, I, J. The total travel time from the West Palm Beach area would be at least 30 minutes longer to Marshall as compared to Minnesota. Friedt Decl. ¶ 14. Moreover, the inventor's later prosecution counsel appears to reside in New York or New Jersey, at least 2.5 hours closer to Minnesota than to Marshall. Friedt Decl. ¶ 17; Friedt Decl. Ex. B, G, K, L.

### 3. Since this case has just begun, there are no practical problems with transfer.

There are no practical problems that would arise from transferring this case. Where the defendant is incorporated in a different district, and has its principal place of business in that district, and no parties, witnesses or evidence have any material connection to the plaintiff's chosen venue, then "the record leaves only the conclusion that the local interest in [the

defendant's district of incorporation] clearly favors transfer." *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (ordering trial court denial of motion to transfer be vacated). This is not a case with any history before this Court.[2]

### C. Public Interest Factors Favor Transfer To Minnesota, Because Its Residents Have A Connection To The Litigation.

The public interests also favor transfer because the residents of Texas have no connection to this litigation, and certainly no connection substantial enough to justify the burdens of jury service. Suits should generally be maintained in the district in which at least one of the parties resides, and in this case, *all* of the parties are based outside of the Eastern District of Texas.

#### 1. Keeping the case here would not relieve any significant administrative difficulties flowing from court congestion.

There would be no relief from court congestion by keeping this suit here. For civil cases that go to trial, the median time from filing to disposition is *the same* – the median in both the District of Minnesota and the Eastern District of Texas is 26 months. *See* Friedt Decl. Ex. M. And if either district were to be favored, the recent trend favors Minnesota, as more cases are coming to this District. The number of cases filed in the Eastern District of Texas increased 7% from 2008 to 2009, while the number filed in the District of Minnesota dropped 42%. *See* Friedt Decl. Ex. N. As the Eastern District of Texas becomes more and more congested with new civil litigation filings, transferring this case to the District of Minnesota would only lessen the administrative burdens of this District's increasing case load.

#### 2. The District of Minnesota has a highly significant interest in having its localized interests decided there.

The District of Minnesota has a greater interest in resolving this dispute. SearchAmerica is based in the District of Minnesota, is active there, and is a significant local presence. The

---

[2] *See, e.g., Red River Fiber Optic Corp. v. Verizon Serv. Corp.*, 2010 WL 3064012, *1 (E.D. Tex, Aug. 3, 2010) (denying transfer because "[i]f the court were to transfer the case now, not only would those built-in efficiencies be wasted, the past two years of litigation before this court will have to be duplicated.")

Supreme Court has affirmed that there is a local interest in having localized interests decided at home. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), *superseded on other grounds by* 28 U.S.C. § 1404. TransUnion's base in Illinois merits no weight on this, because the plaintiffs have chosen to file suit away from their home. *See, e.g., Teleconference Sys. v. Proctor & Gamble Pharms.*, 676 F. Supp. 2d 321, 330 (D. Del. 2009).

There is no justification for burdening the jurors in this District with the costs of litigation between out-of-forum litigants with no ties to the district. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*, 330 U.S. at 508-09. Since another district "has a meaningful local interest in adjudicating the district and no meaningful connection exists with the Eastern District of Texas," *In re Hoffman-La Roche*, 587 F.3d at 1338, the case should be transferred to the district with a local interest.[3]

That a hospital based in the Eastern District of Texas has licensed the accused programs does not affect this conclusion. The Fifth Circuit has rejected the argument that citizens of a certain venue have an interest in adjudicating a case merely because some allegedly infringing products found their way into that market. *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech USA Corp. n*, 551 F.3d at 1321. Favoring a district just because the product is available there "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture." *In re Volkswagen*, 545 F.3d at 318.

### 3. The Eastern District of Texas has no special familiarity with the facts of this case.

This Court has no special familiarity with the facts or patent in this case. Further, there is no judicial district where patent infringement cases are better litigated than any other. *See MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627, *6 (E.D. Tex. Feb. 23, 2009).

---

[3] Moreover, the enforceability of a judgment – however unlikely – would be more easily enforced where SearchAmerica maintains operations. Since SearchAmerica's headquarters in Minnesota could be more easily used to satisfy a judgment, transfer there should be favored.

    **4.**  **There are no problems regarding foreign law in this case.**

This is a patent infringement case under federal law, without state or foreign law issues.

**IV.**  **CONCLUSION**

  There is no relation between the litigation and this forum. All of the parties reside elsewhere. None of the Plaintiffs or Defendants have any significant ties to this District. None of the Plaintiffs or Defendants are incorporated or have a principal place of business here. Instead, the witnesses and documents relating to this case are located in Minnesota. For the foregoing reasons, the Defendants respectfully request that the Court transfer this case to the District of Minnesota, a clearly more convenient venue.

Dated: August 31, 2010

By: */s/Melissa Richards Smith*
Melissa Richards Smith
Texas State Bar No. 24001351
**Gillam & Smith LLP**
303 South Washington Ave.
Marshall, TX 75670
Tel: 903-934-8450
Fax: 903-934-9257
Email: Melissa@gillamsmithlaw.com

R. Scott Feldmann
(pending admission *pro hac vice*)
Jonathan M. Lindsay
(pending admission *pro hac vice*)

**Crowell & Moring LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Tel: 949-798-1372
Fax: 949-263-8414
Email: sfeldmann@crowell.com
   jlindsay@crowell.com

Kathleen J. Balderrama
(pending admission *pro hac vice*)
Robert B. McNary
(pending admission *pro hac vice*)

**Crowell & Moring LLP**
515 South Flower St., 40th Floor

Los Angeles, CA 90071
Tel: 213-443-5559
Fax: 213-622-2690
Email: kbalderrama@crowell.com
        rmcnary@crowell.com

**ATTORNEYS FOR DEFENDANTS SEARCH AMERICA, INC. AND EXPERIAN INFORMATION SOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the following document was filed electronically in compliance with Local Rule CV-5(a):

- Motion to Transfer to the District of Minnesota, by Defendants Search America, Inc. and Experian Information Solutions, Inc.

As such, this motion was served on all counsel who have consented to electronic service, pursuant to Local Rule CV-5(a)(3)(A), on this date. Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail or facsimile transmission on August 31, 2010.

By: */s/Melissa Richards Smith*
Melissa Richards Smith

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the Defendants has complied with the meet and confer requirement in Local Rule CV-7(h). I also certify that this motion is opposed by the Plaintiffs.

Counsel for the parties have conferred on this motion and an agreement could not be reached. A personal telephone conference regarding the proper venue and the claimed merits for this action was held on July 26, 2010 between Scott Feldmann, Kathleen Balderrama, and Robert McNary of Crowell & Moring LLP, counsel for Defendants, and Glen Boudreaux and Michael Locklar of Jackson Walker LLP, counsel for Plaintiffs. The conference was a sincere effort to present the merits of transfer and each participant had the opportunity to express his or her views regarding this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve.

By: */s/Melissa Richards Smith*
Melissa Richards Smith